**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

CALEB WHITFIELD,                                        Case No. 3:24-cv-252
      Plaintiff,                                        Rose, J
                                           Litkovitz, M.J.

      vs.

CORRECTIONS OFFICER RUNYAN, *et al.*,                  **REPORT AND**
      Defendants.                                       **RECOMMENDATION**


Plaintiff Caleb Whitfield, an inmate at the Toledo Correctional Institution (ToCI) in Toledo, Ohio, brings this action under 42 U.S.C. § 1983 alleging violations of his civil rights while he was a pretrial detainee at the Montgomery County Jail (MCJ) in Dayton, Ohio. (Doc. 1). This matter is before the Court on the motion for summary judgment filed by defendants Corrections Officer Runyan ("CO Runyan") and Montgomery County Board of Commissioners ("MCBC"). (Doc. 33). On December 4, 2025, the Clerk issued a Notice To Pro Se Plaintiff(s) Upon Filing By Defendant(s) of Motion(s) For Summary Judgment, which alerted plaintiff to his 21-day deadline to respond to defendants' motion for summary judgment. (Doc. 34). Plaintiff did not file a response to the summary judgment motion and instead filed an untimely motion to continue discovery. (Doc. 37). The Court denied that motion but granted plaintiff a further extension of time of 21 days to respond to the motion for summary judgment. (Doc. 41). Plaintiff has not filed any response in opposition to defendants' motion, and the time for doing so has expired. This matter is also before the Court on plaintiff's motion to amend the complaint (Doc. 43) and defendants' memorandum in opposition (Doc. 44). Plaintiff did not file a reply.

**MOTION FOR SUMMARY JUDGMENT**

    **I.  Background**

Plaintiff alleges that on February 16, 2022, five defendants subjected him to excessive force in an elevator following his refusal to comply with an order, causing lacerations to his wrists and repeated blows to his groin, and that the incident was never documented.  (Doc. 1, at PageID 5-6).  Plaintiff further alleges that shortly after filing a grievance regarding that incident, defendants Runyan, Deputy John Doe No. 3, and Sergeant Eaton retaliated against him by forcing him into a filthy cell, physically assaulting him, and systematically intercepting and denying his subsequent grievances.  (*Id.* at PageID 6-7).  Finally, plaintiff alleges that Captain Stephens was aware of the misconduct but failed to intervene, that Jail policy requiring body-camera escorts was disregarded during both incidents, and that the Jail maintains an institutional custom of tolerating and acquiescing to the use of excessive force.  (*Id.* at PageID 9-10).  In its Order and Report and Recommendation screening plaintiff's unverified complaint, the Court allowed the following claims to proceed:

1. Defendant Deputies John Doe Nos. 1 and 2 used excessive force and improperly allowed defendant APA Officers (John Doe No. 1, John Doe No. 2, and APA Officer Jane Doe) to intervene in the use of force in violation of the Fourteenth Amendment[1];

2. Defendant APA Officers improperly intervened and used excessive force in violation of the Fourteenth Amendment;

3. Defendant Runyon used excessive force in violation of the Fourteenth Amendment;

4. Deputy John Doe No. 3 used excessive force by pointing a taser to plaintiff's head and failed to intervene to protect plaintiff in violation of the Fourteenth Amendment;

5. Excessive-force claims against the MCBC under *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978).

---

[1] On March 24, 2026, the District Judge adopted the undersigned's report and recommendation (Doc. 40) to deny plaintiff's motion to amend his complaint to identify and substitute Gabriel Fragasse and Gregory Staten for Deputies John Doe Nos. 1 and 2 (Doc. 29).  (Doc. 42).

(Doc. 10 at PageID 21, 26-27).

Defendants CO Runyon and MCBC moved for summary judgment on these remaining claims.  (Doc. 33).  Plaintiff failed to respond and therefore fails to offer any evidence or argument to support his claims.[2]  The only evidence before the Court, submitted by defendants, is CO Runyon's affidavit.

## II.  Summary Judgment Standard

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett, All* U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986).  "[A] party seeking summary judgment . . . bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp.,* 477 U.S. at 323.  *See also Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 405 (6th Cir. 1982).  The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case.  *See Barnhart v. Pickrel, Shaeffer & Ebeling Co. L.P.A.,* 12 F.3d 1382, 1389 (6th Cir. 1993).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  *Anderson,* 477 U.S. at 248 (quoting *First Nat. 'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 288 (1968)).  In response to a properly supported

---

[2] Filings verified as set forth in 28 U.S.C. § 1746 have the same force and effect as affidavits for purposes of responding to a motion for summary judgment under Fed. R. Civ. P. 56(c).  *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).  Plaintiff's complaint, however, is unverified.

summary judgment motion, the non-moving party "is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987) (quoting *First Nat'l Bank,* 391 U.S. at 288-89).

The movant bears the burden of demonstrating that no material facts are in dispute. *See Guarino,* 980 F.2d at 410. The non-moving party's failure to respond to the motion does not lessen the burden on either the moving party or the court to demonstrate that summary judgment is appropriate. *Mongan v. Lykins,* No. 1:09-cv-00626, 2010 WL 2900409, at *3 (S.D. Ohio July 21, 2010) (citing *Guarino,* 980 F.2d at 410; *Carver v. Bunch,* 946 F.2d 451, 454-455 (6th Cir. 1991)). The reviewing court must:

> review carefully those portions of the submitted evidence designated by the moving party. The Court will not, however, *sua sponte* comb the record from [the non-moving party's] perspective. Instead, the Court may reasonably rely on [the movant's] unrebutted recitation of the evidence, or pertinent portions thereof, in reaching a conclusion that certain evidence and inferences from evidence demonstrate facts which are uncontroverted. If such evidence supports a conclusion that there is no genuine issue of material fact, the Court should determine that [the movant] ha[s] carried [his] burden. . . .

*Mongan,* 2010 WL 2900409, at *3 (internal quotations and citations omitted).

### III. Evidence Presented

*Affidavit of CO Runyan*

Defendants present the affidavit of CO Runyan in support of their motion for summary judgment. Because it is the only evidence before the Court, the Court includes the contents of this affidavit in its entirety:

> I, David Runyan, being under oath or affirmation, state based on my personal knowledge. I am a resident of Montgomery County, Ohio, who is of adult age and sound mind. I currently work for the Montgomery County Sheriff[']s Office ("MCSO") as a Corrections Officer in the Montgomery County Jail. I have held this position since July 16, 2018. I have been employed by MCSO since July 16, 2018.

4

From July 16, 2018 to present, I have been a Corrections Officer at the Montgomery County Jail in Dayton, Ohio. As a Corrections Officer at the Jail, I have been primarily assigned to housing or Specialty positions. One of my responsibilities is transporting inmates from different locations within the Jail.

On February 17, 2022, at approximately 0530 Hours, Sgt Eaton authorized the transfer of Inmate Caleb Whitfield from Alpha Pod cell 201 to cell 211. Corrections Officer Harrison and I were assigned to move Inmate Whitfield. We instructed Whitfield to pack up his belongings and told him he was being relocated. Deputy Madrid arrived in the pod to assist. He was then placed into handcuffs and escorted to cell 211. Upon entering the door of the cell, Whitfield refused to go in willingly. After several attempts to talk him into going into the cell and explaining to him that this was a direct order, he was still refusing to go in. At that time, I attempted to take control of his arm to escort him into the cell. Whitfield rapidly turned toward us and attempted to charge at us. Officer Harrison and I were able to use our combined efforts to take control of his arms and using our momentum, we were able to escort him into the cell and onto his stomach so that the hand restraints could be removed. We removed the handcuffs and ordered Whitfield to stay on the ground so that we could safely exit the cell.

We exited the cell and as we were closing the door, he jumped up off the ground and attempted to charge out of the cell. However, we were able to secure the door before he could break through. At no point during the altercation did he hit his head, had punches thrown at him or had a taser pointed at his head. There is also no record of him ever complaining of any injuries or that these accusations ever took place after the incident occurred.

(Runyan Aff., Doc. 33-1 at PageID 126-28).

## IV. Analysis

### A. Defendant CO Runyan

Title 42 U.S.C. § 1983 prohibits any person "under color of any statute, ordinance, regulation, custom, or usage, of any State" from depriving a United States citizen "of any rights, privileges, or immunities secured by the constitution and laws." Excessive force claims can be resolved under the Fourth, Eighth or Fourteenth Amendments, depending on the plaintiff's status at the time of the incident. *Coley v. Lucas Cnty., Ohio,* 799 F.3d 530, 537 (6th Cir. 2015). "While the Fourth Amendment's prohibition against unreasonable seizures bars excessive force against free citizens, the Eighth Amendment's ban on cruel and unusual punishment bars

excessive force against convicted persons." *Hopper v. Plummer*, 887 F.3d 744, 751 (6th Cir. 2018) (citing *Graham v. Connor*, 490 U.S. 386, 388 (1989); *Whitley*, 475 U.S. at 318-19).  The Fourteenth Amendment's Due Process Clause governs a pretrial detainee's claims of excessive force and prohibits all "punishment."  *Kingsley v. Hendrickson*, 576 U.S. 389, 397-98, 400 (2015) ("pretrial detainees (unlike convicted prisoners) cannot be punished at all"; the Eighth Amendment, in contrast, prohibits only punishment that is "cruel and unusual.").  The inquiry under the Fourth or Fourteenth Amendment is "whether the plaintiff has shown that the 'force purposely or knowingly used against him was objectively unreasonable.'"  *Hopper v. Plummer*, 887 F.3d 744, 752 (6th Cir. 2018) (quoting *Kingsley*, 576 U.S. at 397) (noting that the test "under either amendment," requires the court to "employ the same objective test for excessive force").  In contrast, under the Eighth Amendment, a convicted prisoner "must satisfy both an objective and a subjective component" to make out an excessive-force claim.  *Hopper*, 887 F.3d at 752 (citing *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)).

As plaintiff was a pretrial detainee in February 2022, the Fourteenth Amendment governs the Court's analysis of his excessive force claims.  The Fourteenth Amendment standard "is solely an objective one." *Kingsley*, 576 U.S. at 397.  To establish his claims against CO Runyan, plaintiff must show that the force used by defendant Runyan was purposeful or knowing (as opposed to accidental) and was "objectively unreasonable." *Id.*  Determining whether the force used against plaintiff was objectively unreasonable, the Court must examine CO Runyan's use of force "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.*  The Court must also consider the "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained. . . ." *Id*. (quoting *Bell v. Wolfish*, 441 U.S. 520, 540, 547 (1979)).

6

Factors relevant to the objective reasonableness of force applied include the following non-exhaustive list:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* at 397.

CO Runyan has asserted qualified immunity as to plaintiff's excessive force claim, which "shields officers from damages suits unless their conduct 'violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Clark v. Abdallah*, 131 F.4th 432, 444 (6th Cir. 2025) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity not only insulates government officials from individual liability for money damages, but also from the burdens and expenses of litigation and trial. *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009). Once a defendant raises a qualified immunity defense to a claimed constitutional violation, the plaintiff must satisfy a two-pronged analysis: (1) Taken in the light most favorable to the party asserting the injury, do the facts alleged show that the official's conduct violated a constitutional right, and (2) if a violation could be made out on a favorable view of plaintiff's submissions, was the right clearly established at the time of the injury. *Id*. at 201.  The Court may address these questions in any order. *Pearson,* 555 U.S. 223.

When a defendant raises the qualified immunity defense, the plaintiff bears the burden of showing that defendant is not entitled to qualified immunity. *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (citing *Reilly v. Vadlamudi,* 680 F.3d 617, 623 (6th Cir. 2012)).  The qualified immunity analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition. . . ." *Saucier*, 533 U.S. at 201.  Showing that a right is clearly

established "do[es] not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Gradisher v. City of Akron*, 794 F.3d 574, 583 (6th Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).  Clearly-established law for qualified immunity purposes must be defined specifically and not "at a high level of generality." *Clark,* 131 F.4th at 452 (quoting *Ashcroft*, 563 U.S. at 742).  "Our focus must be on 'whether the violative nature of *particular* conduct is clearly established . . . in light of the specific context of the case.'" *Id.* (quoting *Guertin v. Michigan*, 912 F.3d 907, 934 (6th Cir. 2019)).

It is undisputed that the use of force at issue occurred while plaintiff was being transferred from one cell to another.  (Runyan Aff., Doc. 33-1 at PageID 127; *see also* Doc. 1 at PageID 6).  According to CO Runyan's affidavit, upon arrival at the new cell, plaintiff initially refused to enter.[3]  (Runyan Aff., Doc. 33-1 at PageID 127).  CO Runyan states he first attempted to resolve the situation through verbal commands before "tak[ing] control of [plaintiff's] arm to escort him into his cell." (*Id.*).  CO Runyan states that plaintiff turned quickly toward him and another officer and charged toward them.  (*Id.*).  CO Runyan states that he and the other officer "escort[ed] him into the cell and onto his stomach" so that CO Runyan could remove Plaintiff's handcuffs.  (*Id.*).  CO Runyan then states they removed plaintiff's handcuffs and ordered him to remain on the ground until they could safely exit the cell.  (*Id.*).

Defendants argue that CO Runyan is entitled to qualified immunity because plaintiff has not established sufficient facts to show that CO Runyan's use of force was excessive or that it

---

[3] Defendants additionally argue that "[p]laintiff admitted to being disruptive and argumentative," but do not cite to any evidence in the record to support that assertion.  (Doc. 33 at PageID 121).

8

was employed maliciously and sadistically to cause harm.[4]  (Doc. 33 at PageID 120-21).

Defendants argue that CO Runyan's actions were not unreasonable, or excessive, and were

intended to maintain order and control plaintiff.  (*Id.* at PageID 122).

"In response to a properly supported summary judgment motion, the non-moving party

'is required to present some significant probative evidence which makes it necessary to resolve

the parties' differing versions of the dispute at trial." *Maston v. Montgomery Cnty. Jail Med.*

*Staff Pers.*, 832 F. Supp. 2d 846, 849 (S.D. Ohio 2011) (quoting *60 Ivy Street Corp.*, 822 F.2d at

1435).  Here, plaintiff has not responded to defendants' motion for summary judgment nor

provided any evidence to raise a genuine question of fact regarding whether the force used

against him was excessive.  The need for some degree of force was present, based upon evidence

in the record.  Defendants have provided an affidavit from CO Runyan explaining that the force

used was in response to plaintiff's refusal to follow orders.  (Runyan Aff., Doc. 33-1 at PageID

127).  A handcuffed detainee refusing to enter a cell and then attempting to charge officers

presents a meaningful, if not extreme, security concern.  Maintaining order during cell transfers

is a routine but essential function of jail operations, and an inmate who physically resists such a

transfer and attempts to charge officers elevates that concern significantly.

CO Runyan made several attempts to verbally persuade plaintiff to comply before

resorting to physical force.  Force was applied only after those efforts failed and plaintiff

attempted to charge the officers.  This course of conduct indicates that the officers exercised

some degree of restraint before escalating to physical control.  The force used—controlling

plaintiff's arms and guiding him to the ground—appears proportionate to the immediate need

---

[4] Defendants also discuss the subjective component of the Eighth Amendment excessive-use-of-force test; however, only the objective test is considered in cases of pretrial detention.  (Doc. 33 at PAGEID 120).  *See Kingsley*, 576 U.S. at 397.

presented by a resisting, charging detainee. Further, plaintiff has presented no evidence in response to defendants' motion documenting injuries sustained as a result of that force. (Runyan Aff., Doc. 33-1 at PageID 127). *Cf. Roberson v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014) ("Corrections officers do not violate a prisoner's Eighth Amendment rights when they apply force 'in a good-faith effort to maintain or restore discipline.'") (quoting *Jennings v. Mitchell,* 93 Fed. App'x 723, 725 (6th Cir. 2004)).

Viewing the evidence in the light most favorable to plaintiff, *Stoudemire v. Mich. Dept. of Corr.*, 705 F.3d 560, 565 (6th Cir. 2013) ("In evaluating if a defendant is entitled to qualified immunity, the Court must adopt the plaintiff's version of the facts . . . unless the plaintiff's version is blatantly contradicted by the record, so that no reasonable jury could believe it."), the Court finds plaintiff has failed to raise a genuine issue of material fact as to whether CO Runyan used excessive force against plaintiff. As explained above, plaintiff has failed to demonstrate that CO Runyan violated a constitutional right. Accordingly, CO Runyan is entitled to qualified immunity on plaintiff's Fourteenth Amendment excessive use of force claim.

B. Defendant MCBC

As it relates to MCBC, plaintiff alleges that "[d]ue to the custom of tolerance and/or acquiescence to excessive force and/or assaultive behavior allowed by the county, MCJ staff felt they could do whatever they want, whenever they want, to whomever they want irrespective of the United States Constitution." (Doc. 1 at PageID 9). Plaintiff alleges that this "custom of tolerance and/or acquiescence" was evidenced by defendants "tolerating and attempting to maintain a code of silence about staff misconduct[]" and failing to ensure the alleged use of force against plaintiff was documented and investigated. (Doc. 1 at PageID 9-10).

10

Defendants argue that the MCBC should be dismissed from this action because it had no authority over the policies or operations of the Montgomery County Jail, and that such authority rests exclusively with the county sheriff. (Doc. 33 at PageID 123). Because the sheriff is unnamed in this action, defendant contends that plaintiff's *Monell* claims against the MCBC must be dismissed. (*Id.* at PageID 122-23). Defendants further argue that any claim regarding conditions at a county jail is properly asserted against the party with authority over those conditions and the power to redress them, in this case the Montgomery County Sheriff's Office (MCSO). (*Id.* at PageID 123).

Plaintiff's official-capacity claims against the MCBC are properly understood as claims against Montgomery County itself. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). In *Monell*, 436 U.S. 658, the Supreme Court held that a government entity may be held liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent an official policy, inflicts the injury. . . ." *Id.* at 694. To succeed on a *Monell* claim, a plaintiff must establish "(1) that a violation of a federal right took place, (2) that the defendants acted under color of state law, and (3) that a municipality's policy or custom caused that violation to happen." *Bright v. Gallia Cnty.*, 753 F.3d 639, 660 (6th Cir. 2014) (citing *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008)). A municipality may be held liable where it was the "moving force" behind the alleged constitutional deprivation but not where it had "the mere right to control without any control or direction having been exercised and without any failure to supervise. . . ." *Monell*, 436 U.S. at 694 & n.58 (citing *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976)). *See also Ridgeway v. Union Cnty. Comm'rs*, 775 F. Supp. 1105, 1110 (S.D. Ohio 1991) (Smith, J.) ("[T]he liability of

11

supervisory personnel and government entities must be based on more than merely the right to control.").

In this case, summary judgment should be granted for the MCBC.  Plaintiff has failed to establish a genuine issue of fact as to whether defendant Runyan used excessive force against him.  As plaintiff has failed to establish a Fourteenth Amendment claim against defendant Runyan, the MCBC cannot be held liable under *Monell* as the violation of a constitutional right is a pre-requisite for *Monell* liability.  *Bright*, 753 F.3d at 660.  Thus, "it does not matter whether that action was taken pursuant to a policy or custom adopted by the Board or the Commission." *Id*.  Therefore, defendant MCBC's motion for summary judgment should be granted.

## MOTION TO AMEND

The granting or denial of a motion to amend pursuant to Fed. R. Civ. P. 15(a) is within the discretion of the trial court.  Leave to amend complaint should be liberally granted.  *Foman v. Davis,* 371 U.S. 178 (1962).  The Court should consider factors such as undue delay, bad faith or dilatory motive on the part of the movant, the repeated failure to cure deficiencies by amendments previously allowed, lack of notice to the opposing party, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment.  *Id.  See also Brumbalough v. Camelot Care Centers, Inc.,* 427 F.3d 996, 1001 (6th Cir. 2005) (citing *Coe v. Bell,* 161 F.3d 320, 341-42 (6th Cir. 1998); *Brooks v. Celeste,* 39 F.3d 125, 130 (6th Cir. 1994)).  "Ordinarily, delay alone, does not justify denial of leave to amend." *Morse v. McWhorter,* 290 F.3d 795, 800 (6th Cir. 2002).  "At some point, however, 'delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." *Id.* (quoting *Adams v. Gould,* 739 F.2d 858, 863 (3d Cir. 1984)).

12

On April 6, 2026, plaintiff filed a motion to amend his complaint to add spoliation and civil conspiracy claims and name six new defendants stemming from the February 16, 2022 incident forming the basis of this lawsuit.  (Doc. 43).  He alleges that "since it became clear the plaintiff would not get discovery continued the plaintiff now appropriately requests to amend his complaint. . . ."  (Doc. 43 at PageID 188).  Plaintiff appears to allege that the new defendants failed to properly document the February 16, 2022 incident or retain alleged video evidence of the incident.  He further alleges he did not "have knowledge of these facts" until November 10 through November 30, 2025 "upon receiving the discovery from the defendants."  (*Id*. at PageID 187).

Plaintiff's motion to amend the complaint should be denied because his unjustified delay in seeking to amend his complaint at this late stage of the litigation would unfairly prejudice defendants.  Plaintiff has failed to justify his failure to seek an amendment earlier in these proceedings.  First, discovery in this case closed on November 4, 2025, and the dispositive motion deadline was set as December 4, 2025.  Those case deadlines have long since passed, and plaintiff should have identified any new claims or injuries before those dates, especially before defendants filed their summary judgment motion.

Plaintiff claims he did not receive discovery related to his new claims and new defendants until November 2025.  This argument, however, has already been considered and rejected.  When plaintiff raised the same issue in his prior motion to compel (Doc. 26) and motion to continue discovery (Doc. 27), the Court denied both motions based on defendants' unrefuted evidence that all the allegedly missing discovery had been produced on September 26, 2025.  (Doc. 30.)

13

Plaintiff's effort to blame defendants for his own delay is unavailing.  His motion to amend was filed nearly four months after defendants moved for summary judgment — a delay that rests squarely on plaintiff's shoulders.  It is plaintiff's obligation to diligently prosecute his own lawsuit, and his pro se status does not excuse that obligation.

Likewise, by his own admission, plaintiff is seeking to amend his complaint and restart the discovery process "since it became clear the plaintiff would not get discovery continued" in this matter.   Plaintiff's previous requests for an extension of the discovery deadline were denied. (Docs. 30, 41).  The instant motion to amend appears to be a backdoor attempt to reopen discovery in contravention of this Court's rulings.

In addition, permitting amendment at this late stage unfairly prejudices defendants. Defendants have filed a summary judgment motion and have supported their arguments with evidence.  Despite being granted an extension of time to respond to the motion for summary judgment (Doc. 41), plaintiff did not file a memorandum in opposition and instead filed a motion to amend the complaint.  Allowing an amendment now would require the Court to re-open discovery and further extend the dispositive motion deadline.  Allowing plaintiff to amend his complaint at this late date would prejudice defendants by requiring them to expend additional resources on discovery and dispositive motions, further prolonging the resolution of this case. *See Phelps v. McClellan,* 30 F.3d 658, 662-63 (6th Cir. 1994) (citing *Tokio Marine & Fire Ins. Co. v. Employers Ins. of Wausau,* 786 F.2d 101, 103 (2d Cir. 1986)).  As plaintiff fails to justify waiting until after discovery was closed and after defendants filed their summary judgment motion to seek leave to amend his complaint, his motion to amend should be denied.  *See Wade v. Knoxville Util. Bd.,* 259 F.3d 452, 459 (6th Cir. 2001) (when seeking to amend at a late stage in litigation, the movant has "an increased burden to show justification for failing to move

14

earlier").

**IT IS THEREFORE RECOMMENDED THAT:**

1. Defendants' motion for summary judgment (Doc. 33) be **GRANTED**.

2. Plaintiff's motion to amend the complaint (Doc. 43) be **DENIED**.

3. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of any Order adopting this Report and Recommendation would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds*, *Jones v. Bock*, 549 U.S. 199, 203 (2007).

Date: 4/27/2026

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

CALEB WHITFIELD,
    Plaintiff,

        vs.

CORRECTIONS OFFICER RUNYAN, *et al.*,
    Defendants.

Case No. 3:24-cv-252

Rose, J

Litkovitz, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).